Anderson, J.
By an act of the general assembly approved March 6,1874, the plaintiff in error, David A. Plecker, was authorized to erect a toll-bridge across North river at Mount Crawford, m the county of Rockingham, at or near the site of the former bridge; and for that purpose he is expressly authorized “ to purchase or condemn, in the mode ■ prescribed by law, a lot of ground not exceeding one acre for the erection of a toll-house, and so much land as may be necessary for the abutments and the construction of said bridge, and a convenient pass-way over the same.” The land on the west side of the river, where he proposed to erect the bridge, was owned by the defendant in error, Jackson Rhodes, and being unable to purchase from him the land necessary for the purpose, he says he instituted proceedings in the county court of Rocldngham to have so much as was necessary condemned in pursuance of the said act, which were resisted by the- said Rhodes, but resulted in the judgment of the court in his favor, and in the condemnation of so much of the said defendant’s land as had been laid off and set apart by the commissioners of the court for the purpose. And he says that he thereupon proceeded with the work of constructing and erecting the bridge, and had it nearly completed when the said defendant in error obtained a writ of error and supersedeas to the judgment of the county court from the “circuit court of Rockingham county, and the reversal of the same. And he comes to this court by writ of error and supersedeas to the judgment of the said circuit court for relief.
■ At the very threshold of the case we are confronted with the declaration that the legislature had not the *797 power to subject private property to such a purpose. The police of a state embraces in its system of internal regulations, among others, interior communication. Chief Justice Shaw said in Commonwealth v. Alger, 7 Cush. R. 53, 84 : “"We'think it a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community.” Anri Redfield, Chief Justice, another eminent judge, says in Thorpe v. Rutland & Burlington R. R. Co., 27 Verm. R. 140, 149, by this “general police power of the state, persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the state ; of the perfect right in the legislature to do which, no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned.” These eminent authorities are cited by Cooley in his work on Constitutional Limitations, p. 572-3, in support of this well-established doctrine, and he cites other numerous authorities, to which I need onty refer.
On page 592, after sayin'g that the state may authorize the construction of bridges over navigable waters, notwithstanding they may, to some extent, interfere with the right of navigation, he observes: “The legislature must always have power to determine what public ways are needed,” &c. This power of granting authority to individuals to erect toll-bridges has been exercised by the legislature of the state from a period perhaps coeval with the foundation of the government. We have instances of it in the construction of Mayo’s bridge over James river at Richmond, the bridge at Fredericksburg, over the Rappahannock, the bridge over James river at *798 Lynchburg, and over the same stream at Buchanan in Botetourt county. The first of the bridges I remember have heard of at or near Buchanan, was Beale’s bridge, which was erected, I suppose, before I was born.
But it is assumed by defendant’s counsel that the act authorizing the erection of the bridge in question is for private benefit, and that section 14, article 5, of the constitution of this state, by implication, prohibits the taking the private property of one individual for the private use or benefit of another. In general that may be sound in principle, but we do not think it is implied by the clause of the constitution referred to, or that it is a constitutional prescription. There are certainly exceptions to it, and when it comes in conflict with the maxim sic uiere tuo ut alienum non laedas, it is not true. One citizen is entitled to a right of way through his neighbor’s land, if it is the only way by which he can have access to his mill or to his court-house, &c. Hor is it sound if the conferring the privilege or benefit upon the individual, will be for the public benefit and convenience. The charter of companies for making turnpike roads and railroads, with special privileges, is for the benefit of the private individuals who undertake the enterprise, else they would not undertake it. But they are works which will be for the benefit of the community, or the state, or supposed to be, otherwise the legislature would not grant the chai’ter. And so the establishment of ferries is for the benefit of the individuals, to whom the franchise is granted. And in like manner the authority given to an individual for the construction of a toll-bridge across a river, is a franchise which is to benefit the individual to whom it is granted, else he would not undertake it; but it is granted to the individual in consideration of the convenience and benefit it will be to the public. All these exercises of the functions of sovereignty by the legislature, and the be *799 stowment of franchises upon individuals, are designed to be for the public benefit, and rest upon the same principle. Whether they will be beneficial to the public, when the application is made to the legislature to grant them, is a question addressed to that body, and unless they are satisfied that the public will be benefited by their construction, the franchise will not be granted. When the application is made to the courts, it is for the courts to determine whether the work will be beneficial to the public, as in the establishment of roads and landings, the power to do which is vested in the courts by statute, chapter 52, Code of 1873-,• and the mode of procedure is prescribed by which the courts may determine whether the proposed road or landing, will be of public benefit, and also the advantage and disadvantage to individuals, and by which individuals and private parties may be compensated for their property which it may be necessary to appropriate to the attainment of the projected improvement. But when the franchise, as the construction of toll-bridges, is granted as in this case directly by the legislature, the benefit it will be to the state or the public is the basis upon which the franchise is granted; and if granted, it is upon the ground that the legislature is satisfied that it will be of public benefit, and hence in such cases the law requires no enquiry to be made by the courts with regard to the benefit it will be to the public. But if in the construction of the work it is necessary to take private property, or private parties are damaged, then it is necessary that the enquiry should be made by the courts as to the value of the property, or the amount of damage sustained, and to award compensation. That has to be done in the case of railroad companies. When a charter is granted to a company or an individual to construct a rail or turnpike road, no action or enquiry is required to be made by the courts as to whether the work will be *800 beneficial to the public or not; that question has been decided by the legislature itself, when it granted the charter. And just so when the legislature grants to an individual or company a franchise to construct a toll-bridge, there is no law requiring the question to be submitted to the courts whether it will be beneficial to the public or not; that question has already been decided by the legislature.
In accordance with this principle, the act of March 6th, 1874, was enacted, granting to D. A. Plecker authority to erect the toll-bridge in question, and investing him with franchises therein. Whilst the act authorizes him to “ purchase, or condemn in the mode prescribed by law, a lot of ground, not exceeding one acre, for the erection of a toll-house, and so much land as may be necessary for the abutments and the construction of the said bridge and a convenient pass-way over the same,” it directs no enquiry to be made by the courts as to the public benefits which would accrue from the erection of said bridge. There is no proof in the cause, if it would have been competent for the defendant to have offered such proof, that it would not be beneficial to the public. But if it were proper to go into such an enquiry, there is very strong presumptive evidence that it would be a very great convenience and benefit to the public. The bridge is to be erected over North river, a very considerable stream near the town of Mount Crawford, to furnish a pass-way over said river upon a public highway, near the site of a former bridge upon said highway, which is not now standing, and a slight change to be made in the old road so as to pass over the proposed new bridge. These facts tend strongly to show that it would be a great public convenience and benefit, and it must have been so regarded by Plecker or he would not have undertaken to construct it; for in proportion to the use and benefit to the public, it would be beneficial to him. *801 "We do not think that there'is any ground of error in the assignment that the commissioners made no report as to the public benefits, and that no such enquiry was directed by the court.
But it is objected that the plaintiff proceeded under chapter 56 of the Code, and not under chapter 52. The act of March, 1874, which authorizes him to condemn the land, does not require him to proceed under chapter 52 or 56, but to condemn it in the mode prescribed by law. Chapter 56 does prescribe the mode whereby the lands of private parties may be condemned for such purposes, and that mode was pursued in this case. But that act only authorizes a company incorporated for a work of internal improvement, the court of a county or the council of a town to condemn the land. It may with much force be argued that the plaintiff by the act of 1874 is chartered as a sole corporation for a work of internal improvement. He is invested with important chartered privileges as a sole corporation. He and his legal representatives are invested with power to collect tolls on all travel and transportation over sáid bridge, and the rate of the tolls is regulated by the act. And it is expressly reserved to the legislature to change and regulate hereafter the rate of tolls “prescribed by this charter.” The act calls it a “charter.” And it moreover provides that “all laws in force regulating toll-bridges shall apply to this act.” Those laws may be found in Code of 1878, ch. 64, §§ 25, 26, 27, 28, 29, 30; and they show that the proprietor of the toll-bridge is in some sense a public character, and that he holds the franchise under responsibilities to the state and under the regulations of law, and that the erection of a toll-bridge is not a matter exclusively of private interest, but that it is a work in which the public has an interest, and which is subject "to state'control.- • •
*802 But this view is not necessary to warrant this proceediug- Although chapter 56 of the Code does not give to A. Plecker authority to proceed in this prescribed mode, but gives such authority only to a company, &c., as before recited, we think the act of 1874 is cumulative in this respect, and gives like authority to I). A. Plecker so to proceed. It expressly gives him authority to condemn, which chapter 56 of the Code does not, if he is not a sole corporation, and to condemn in the mode prescribed by law. And this is the mode prescribed by law to condemn land for such purposes. We are of opinion, therefore, that the proceedings in this case under chapter 56 of the Code, and by authority of the act of March, 1874, were warranted.
There are other assignments of error, which we are of ■ppinion are unsustained. We need only notice one of them—that the act of March 6, 1874, required D. A. Plecker to begin the bridge within six months from its date, and the time had expired before he gave notice to Rhodes of the motion in .this proceeding. The said notice was not necessary to the commencement of the bridge. That may have been commenced within six months. The getting of timbers or other material, we think, would have been a commencement within the meaning of the act. And before the twelve months had expired, within which time the bridge was required to be completed, the act was amended and re-enacted, to-wút: on the 15th of January, 1875, requiring the bridge to be completed within two years. If it was not entirely completed within that time, which is not shown by the evidence certified, the work was most probably retarded by the obstruction interposed by the defendant in error. The progress of the work was probably obstructed by him until the judgment of the county court against him and in favor of the plaintiff, on the 20th of May, 1875. He seems from thence to have made no opposition, and *803 from anything that appears to have acquiesced and remained silent, whilst he saw the plaintiff prosecuting the work, and probably at great expense, until the 3d March, 1877, when he applies for and obtains from the circuit court a supersedeas to any further prosecution of the work—not two years from the time the plaintiff was released from his obstructions by the 'judgment of the county court. We think under the circumstances he ought not to be allowed to insist upon a forfeiture by the plaintiff of his franchise, because of his not completing the bridge within two years. If it be a delinquency on the part of the plaintiff, he is in all probability more to blame for it than anybody else, and it is not for him to derive a benefit from it. It is a matter between the plain tiff and the commonwealth, or the legislature, whether the latter would under the circumstances subject the former to a forfeiture of his franchise because he had failed to comply with the strict terms of the proviso, to complete the bridge within two years. The plaintiff says the bridge was nearly completed, when he was arrested again in the work by the defendant obtaining from the circuit court a supersedeas.
Upon the whole, we are of opinion to reverse the judgment of the circuit court, and to affirm the judgment of the county court of Rockingham county.
Moncure, P., and Christian, J., concurred in the opinion of Anderson, J.
Staples and Burks, J’s, concurred in the conclusion, but not in all the views set forth in the opinion of Anderson, J.
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of *804 the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said judgment of the circuit court reversing the judgment of the county court of said county is erroneous, and that there is no error in the said judgment of the said county court. It is therefore considered that the said judgment of the circuit court be reversed and annulled, and that the plaintifF in error, David A. Pleeker, recover against the defendant in error, Jackson Rhodes, his costs by him expended in the prosecution of his writ of error aforesaid here. And this court proceeding to render such judgment as the said circuit court ought to have rendered, it is considered that the judgment of the said county court be affirmed, and that the said David A. Pleeker, the defendant in error in the said circuit court, do recover against the said Jackson Rhodes his costs by him in the said court expended ; which is ordered to be certified to the said circuit court of Rockingham county.
Judgment of the circuit court reversed.